## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TACARA CAMPBELL,
    *Plaintiff*,

    v.

                              No. 3:21-cv-107 (JAM)

CITY OF WATERBURY *et al.*,
    *Defendants*.

## ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS

The plaintiff let a friend drive her car. But the friend got arrested for drug dealing, and the police seized the car, and then the State of Connecticut filed a civil forfeiture action against the car. Although the plaintiff claims she is an innocent owner of the car, she has been unable to secure its return even after years of state court litigation.

The plaintiff has now filed this federal court action. She primarily claims that the defendants engaged in an unconstitutional "taking" of her property. As relevant here, she seeks relief against the State of Connecticut Judicial Branch, against a state prosecutor who signed a stipulation during the state civil forfeiture proceedings, and against a deputy state court clerk who did not serve the plaintiff with notice about the entry of a stipulation and judgments in the forfeiture proceedings.

All three of these defendants now move to dismiss, and I will grant their motion. As to all claims against the State of Connecticut Judicial Branch and the official-capacity claims against the prosecutor and deputy court clerk, I conclude that the Eleventh Amendment bars these claims from proceeding in a federal court. As to the individual-capacity claims against the prosecutor and deputy court clerk, I principally conclude that these defendants have personal immunity under federal and state law. Accordingly, I will grant the motion to dismiss.

1

**BACKGROUND**

On August 1, 2017, the plaintiff Tacara Campbell asked her friend—Robert Bowens—to take her car in for a repair.[1] But Bowens was arrested on drug charges, and the Waterbury police seized the car.[2] The car was initially transferred to a car storage facility and later transferred to another car storage facility.[3]

In October 2017, the State of Connecticut filed a civil forfeiture action against the car in Connecticut Superior Court.[4] Bowens disclaimed any interest in the vehicle and he filed a motion with the court to release it to Campbell.[5] The state court scheduled an initial hearing for the forfeiture action on November 15, 2017, and Campbell went to court that day to present proof of her ownership of the car, but the car was not released to her.[6]

On September 12, 2018, Bowens was sentenced by a state judge to a term of five years of imprisonment.[7] On that same day, Bowens signed a stipulation for the civil forfeiture action.[8] The stipulation stated that Bowens agreed to forfeit $5,413 in seized currency and further stated that "The Claimant, Robert Bowens / Tacara Campbell" waived any claim to Campbell's car and agreed to "donate" the car to the police department in lieu of storage fees.[9]

This stipulation was counter-signed by Senior Assistant State's Attorney Cynthia Serafini "in my capacity as legal counsel for the State of Connecticut."[10] The state court entered

---

[1] Doc. #41 at 4 (¶¶ 17–19).
[2] *Ibid.* (¶¶ 20–21).
[3] *Id.* at 4–6 (¶¶ 22, 31, 44).
[4] Doc. #44-1 at 28 (Def. Ex. 1).
[5] Doc. #41 at 5 (¶ 29); *see also* Doc. #63-1 at 12 (Pl. Ex. E-1).
[6] Doc. #41 at 5 (¶¶ 25, 26, 30); Doc. #63-1 at 9 (court hearing notice).
[7] Doc. #63-1 at 35-40 (Pl. Ex. H – sentencing transcript).
[8] Doc. #41 at 5 (¶ 32).
[9] Doc. #44-1 at 31 (Def. Ex. 2 - stipulation). Although the amended complaint alleges that the "Stipulation acknowledges that the vehicle is statutorily exempt from forfeiture," Doc. #41 at 5 (¶ 33), the stipulation that has been filed on the record does not include any such statement or acknowledgment.
[10] Doc. #44-1 at 31 (Def. Ex. 2 - stipulation).

judgment on the same day in accordance with this stipulation.[11] The forfeiture judgment was amended in October 2018 and then again in February 2020.[12]

According to Campbell, she was not sent notice of the stipulation, the original judgment, or the two later amendments to the judgment.[13] She maintains that she was never presented with or made aware of the stipulation and did not give anyone authority to add her name to the stipulation.[14]

Campbell blames the Deputy Chief Clerk of Court Laura Leigh for failing to notify her about the stipulation or judgments. According to Campbell, Leigh had Campbell's contact information, and it was Leigh's responsibility to ensure that persons with interests in a pending forfeiture matter receive notice at all stages of the proceedings.[15]

On August 3, 2020, Campbell—with the assistance of counsel—filed a motion to open and modify the judgment, seeking to vacate the stipulation and for the car to be returned to her.[16] Four months later, on December 3, 2020, she entered into a stipulation with the State providing that the car "shall be returned to Tacara Campbell upon the payment of $500.00 to the tow facility/storage location."[17] The state court entered a reopened and amended judgment to adopt the stipulation one day later and ordered that the car "shall be returned" to Campbell upon the payment of the $500 storage fee.[18]

But even this did not put an end to Campbell's troubles. According to Campbell, the police have failed to ensure the return of her car, and the storage facility has refused to comply

---

[11] Doc. #41 at 6 (¶ 35); Doc. #63-1 at 34 (Pl. Ex. H – judgment).
[12] Doc. #41 at 6 (¶ 36); Doc. #63-1 at 43 (Pl. Ex. I).
[13] Doc. #41 at 6 (¶ 39).
[14] Doc. #63-1 at 52 (¶ 21) (Pl. Ex. K – affidavit).
[15] Doc. #41 at 6 (¶¶ 37-38).
[16] Doc. #44-1 at 33 (Def. Ex. 3 – motion).
[17] *Id.* at 37–38 (Def. Ex. 4 – stipulation). This stipulation was signed on the State's behalf by a different prosecutor than Serafini. *Id.* at 38.
[18] *Id.* at 40 (Def. Ex. 5 - amended judgment).

with the court order to accept only $500 for the years it has had the car in storage.[19] The car has sustained significant damage while in storage.[20] Campbell has filed a pending motion for further relief from the state court.[21]

In the meantime, Campbell has also filed this federal lawsuit.[22] As relevant here, she names the State of Connecticut Judicial Branch, the prosecutor Serafini, and the deputy court clerk Leigh as defendants (and whom I will refer to collectively as the "State defendants"). She also names as defendants the City of Waterbury, various Waterbury police officers, and the two car storage facilities and their individual managers.

As to the State defendants, Campbell alleges a single federal law claim: that they violated her rights under the Takings Clause to the U.S. Constitution (Count One). She also alleges against all three of the State defendants a parallel state law "takings" claim under Article First, § 11 of the Connecticut Constitution (Count One), as well as a state law claim for tortious interference with a business relationship against Serafini and Leigh (Count Two) and for conversion against Serafini (Count Three).[23]

Campbell seeks an award of money damages and attorney's fees.[24] She further seeks declaratory relief with respect to an alleged policy, practice, and custom of the State of Connecticut and City of Waterbury to compel owners of vehicles seized by law enforcement to pay high storage fees and taxes as a condition for the return of their vehicles:

> Plaintiff further seeks a Judgment declaring as unconstitutional, the practice, policy, and/or custom of the State and City to compel the owners of vehicles, seized by law enforcement

---

[19] *Id.* at 42 (Def. Ex. 6 – motion).
[20] Doc. #41 at 6 (¶ 42).
[21] Doc. #44-1 at 42–43 (Def. Ex. 6 – motion).
[22] Doc. #41 (amended complaint).
[23] Doc. #41 at 7–10. Campbell argues in her briefing that "[t]he facts also clearly support a due process claim for violation of Plaintiff's rights to a hearing guaranteed by the Fourteenth Amendment of the US Constitution and C.G.S. § 54-36h." Doc. #63 at 12. But the amended complaint does not allege any due process claim, and therefore I have no occasion to address any due process claim in this ruling.
[24] Doc. #41 at 8 (¶ 54).

agents and held as evidence or in pursuit of other lawful functions, to pay storage fees of up to Tens of Thousands of Dollars, often exceeding the value of the vehicle, and applicable taxes before said seized vehicle is returned to its rightful owner after the justification for the initial seizure no longer pertains; or, if said fees are not paid, said is disposed of at the sole discretion of the State and/or the Waterbury Police Department or the entity entrusted with the storage of the vehicle.[25]

The State defendants now move to dismiss the complaint on immunity grounds pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim against them pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain subject-matter jurisdiction and a plaintiff's claims for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155–56 (D. Conn. 2016).[26] For purposes of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider reliable evidence outside the pleadings. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). For purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must limit itself to the allegations of the complaint but may also consider documents that are referenced in or integral to the allegations of the complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). The parties have submitted numerous documentary exhibits that I may properly consider for purposes of both Rule 12(b)(1) and Rule 12(b)(6).[27]

---

[25] *Ibid* (¶ 55).

[26] Unless otherwise indicated, this ruling for purposes of readability omits internal quotation marks, alterations, citations, and footnotes in any text that it quotes from court decisions.

[27] Doc. #44-1 at 27–45 (Def. Exs. 1-5); Doc. #63-1 (Pl. Exs. A-L). Many of the exhibits are duplicative.

The Takings Clause of the Fifth Amendment guarantees that "private property [shall not] be taken for public use, without just compensation." U.S. Const., Amend. V. This protection applies to the States through the Fourteenth Amendment. *See 1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 261 (2d Cir. 2014). Notwithstanding the protections of the Takings Clause, "it has long been settled that if the government acts pursuant to a forfeiture statute, it may seize personal property without compensating the owner." *United States v. Davis*, 648 F.3d 84, 97 (2d Cir. 2011).

I will start by addressing Campbell's claims against the State of Connecticut Judicial Branch. Then I will turn to her official-capacity and individual-capacity claims against Serafini and Leigh.

### State of Connecticut Judicial Branch

The Connecticut Judicial Branch is an arm of the State of Connecticut. It is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by private citizens against the States, any state government entities, and any state government officials in their official capacities. *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). For this reason, many rulings hold that the Connecticut Judicial Branch has Eleventh Amendment immunity from federal court proceedings. *See, e.g.*, *Sargent v. Emons*, 582 F. App'x 51, 52 (2d Cir. 2014); *Villano v. Jud. Dep't*, 2019 WL 4933517, at *3 (D. Conn. 2019); *Lynch v. Jud. Branch*, 2019 WL 3716511, at *2 (D. Conn. 2019); *Swinton v. State of Connecticut Jud. Branch*, 2016 WL 4257326, at *2 (D. Conn. 2016); *Skipp v. Connecticut Jud. Branch,* 2015 WL 1401989, at *7 (D. Conn. 2015).

To be sure, a State is not entitled to Eleventh Amendment sovereign immunity if it

waived its immunity or if Congress has abrogated its immunity. *See Virginia Office for*

*Protection and Advocacy v. Stewart,* 563 U.S. 247, 253–54 (2011). But Campbell does nothing

to show that the State of Connecticut has consented to waive its sovereign immunity for purposes

of federal court Takings Clause claims or, alternatively, that Congress has abrogated the

Eleventh Amendment immunity for Takings Clause claims. Here, Campbell brings her Takings

Clause claim pursuant to 42 U.S.C. § 1983, and it is beyond dispute that Congress's enactment of

§ 1983 did not abrogate Eleventh Amendment immunity from federal court lawsuits. *See Salu v.*

*Miranda*, 830 Fed. App'x 341, 347 (2d Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 338–45

(1979)).

Campbell tries to get around all this by arguing that there is some sort of exception to

Eleventh Amendment immunity for Takings Clause claims. But that is not so. As many courts

have recognized, the Takings Clause does not trump Eleventh Amendment immunity from

federal court proceedings, provided that there is a state court forum for such claims. *See Cmty.*

*Hous. Improvement Program v. City of New York*, 492 F. Supp. 3d 33, 40–41 (E.D.N.Y. 2020)

(collecting cases). The State of Connecticut indeed provides a state court forum for Takings

Clause claims. *See 184 Windsor Ave., LLC v. State*, 274 Conn. 302, 319 (2005) (state takings

claim); *Sosa v. Robinson*, 200 Conn. App. 264, 294 n.12 (2020) (federal takings claim).

It is true that the Supreme Court has recently overruled its longstanding precedent that

had required a plaintiff to exhaust any Takings Clause claims in a state court before seeking

relief in a federal court. *See Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). But this does not

mean it is open season for plaintiffs to file Takings Clause claims in federal court against States,

state entities, and state officials. The *Knick* decision involved a Takings Clause claim against a

local government—not against a State, a state entity, or a state official—and the Supreme Court in *Knick* did not address the intersection of the Takings Clause and Eleventh Amendment immunity. Therefore, the *Knick* decision establishes at most that the Takings Clause "can overcome *court-imposed*—rather than constitutional — restrictions on takings claims." *Cmty. Hous. Improvement Program*, 492 F. Supp. 3d at 42; *see also Zito v. N. Carolina Coastal Res. Comm'n*, 8 F.4th 281, 286–88 (4th Cir. 2021) (similarly rejecting argument that the *Knick* decision deprives a state agency of Eleventh Amendment immunity against a Takings Clause claim); *Heidel v. Hochul*, 2021 WL 4942823, at *6 (S.D.N.Y. 2021) (same as to Takings Clause claim against State of New York and governor).

Campbell also relies on an exception to Eleventh Amendment immunity that the Supreme Court first recognized in *Ex Parte Young*, 209 U.S. 123 (1908). This exception allows a federal court to grant an order of prospective injunctive relief against a state official for an ongoing violation of federal law. *See Virginia Office for Protection and Advocacy,* 563 U.S. at 255–56; *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). But because the *Ex Parte Young* exception allows for a grant of relief only against an individual state officer (as distinct from a State or state entity), it has no relevance to Campbell's claim against the State of Connecticut Judicial Branch.

In short, the State of Connecticut Judicial Branch has Eleventh Amendment sovereign immunity from having to defend in a federal court against Campbell's federal and state takings claims. Accordingly, I will grant the motion to dismiss the Connecticut Judicial Branch as a defendant in this action.

### *Official-capacity claims against Serafini and Leigh*

Serafini is a state prosecutor, and Leigh is a deputy clerk of a state court. To the extent that they have been named as defendants in their official capacity, both are state officials entitled

8

to Eleventh Amendment sovereign immunity from federal court proceedings for all the reasons I have set forth above. The only question is whether—because they are state officials—Campbell may proceed against them in their official capacities in accordance with the *Ex Parte Young* exception to Eleventh Amendment immunity. The answer is "no" for several reasons.

First, the *Ex Parte Young* exception extends only to violations of federal law, not state law. *See Vega*, 963 F.3d at 283 (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120–21 (1984)). As a result, the Eleventh Amendment bars all of Campbell's official-capacity state law claims against Serafini and Leigh.

Second, the *Ex Parte Young* exception extends only to claims for ongoing violations of federal law and that seek prospective injunctive relief. Campbell accuses Serafini of wrongfully signing a stipulation in 2018 and accuses Leigh of not giving her notice of certain court documents in 2018 and 2020. But she does not allege facts to suggest that either Serafini or Leigh are continuing to engage in any wrongdoing against her.

Third, the *Ex Parte Young* exception does not apply to claims against state officials who lack authority to implement the requested prospective injunctive relief. *See Doyle v. Hogan*, 1 F.4th 249, 254–57 (4th Cir. 2021); *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (Bianco, J.). Neither Serafini nor Leigh have custody of Campbell's car. Neither Serafini nor Leigh have any authority as part of their job positions as a prosecutor and a deputy court clerk to require that the car storage facility return Campbell's car to her. They have no authority to implement any order of prospective injunctive relief for Campbell.

What about Campbell's claim for declaratory relief against an alleged policy, practice, or custom that requires innocent car owners to pay high storage fees in order to obtain the return of their cars that have been seized in forfeiture proceedings? Even assuming this request for

9

declaratory relief can be characterized as a request for prospective injunctive relief under *Ex Parte Young*, Campbell has no standing to press this general challenge to the alleged government policy. That is because she has entered into a stipulation with the State that in turn has been adopted in a state court order for her to secure the return of her car in exchange for her payment of a $500 storage fee.[28] Having expressly agreed to pay $500 for the return of her car, she cannot complain about any ongoing policy that requires car owners like her to pay high storage fees. She has no grounds to complain in a federal court about a state court order to which she herself stipulated.[29] More generally, a plaintiff has no standing to obtain injunctive relief against law enforcement practices "where there is no showing of any real or immediate threat that the plaintiff will be wronged again," and "[a]bsent a sufficient likelihood that [the plaintiff] will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen of a [city]; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

In short, Serafini and Leigh have Eleventh Amendment sovereign immunity from all of Campbell's official-capacity claims against them. Campbell has no standing to mount a general challenge to any alleged policy that requires car owners to pay high storage fees in order to

---

[28] Doc. #44-1 at 37–38, 40.

[29] Campbell does not claim that the stipulation was not knowing and voluntary. She cannot do so because the stipulation was negotiated and signed by the same attorney who now represents her in this federal court action. It is true that her stipulation reserved Campbell's rights "to seek any *additional* civil remedies she may have in civil court," *id.* at 38 (emphasis added), which she is obviously doing by means of this lawsuit that primarily seeks money damages against a large number of defendants. But the stipulation did not reserve any right to undo the stipulation itself that governs the terms by which Campbell has the right to the return of her car upon her payment of $500. Although Campbell now complains that the police and the car storage facility have not obeyed the stipulated court order, this is no grounds to seek federal court relief against the State defendants who have nothing to do with this alleged non-compliance with the state court order.

obtain the return of their cars that have been seized in forfeiture proceedings. Accordingly, I will grant the motion to dismiss the official-capacity claims against Serafini and Leigh.

### *Individual-capacity Takings Clause claim against Serafini*

Campbell seeks relief under the Takings Clause against Serafini and Leigh in their individual or personal capacities. Although the Eleventh Amendment is no bar to an individual-capacity claim against a state official under 42 U.S.C. § 1983, a state official may still claim the benefit of other personal immunity defenses. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

Serafini has absolute prosecutorial immunity from Campbell's claim against her for an award of money damages. "Absolute immunity protects acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Horn v. Stephenson*, 11 F.4th 163, 173 (2d Cir. 2021). Thus, "[a] prosecutor acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all acts 'intimately associated with the judicial phase of the criminal process.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

A prosecutor's absolute immunity may extend to acts performed in civil asset forfeiture proceedings. *See Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018); *see also Torres v. Goddard*, 793 F.3d 1046, 1052 (9th Cir. 2015) (joining "every other circuit that has addressed this question" in "hold[ing] that absolute immunity is available to prosecutors in the context of civil forfeiture proceedings").

Here, Campbell seeks to hold Serafini liable for signing a stipulation with Bowens as part of the settlement of civil asset forfeiture proceedings. The stipulation formed the basis for a state court judgment that was entered on the same day and in conjunction with the state court's

sentencing of Bowens. The record leaves no doubt that Serafini signed the stipulation in the course of her role as an advocate for the State and that her signing of the stipulation was intimately associated with the judicial process.

This type of act to settle or resolve ongoing litigation falls well within the scope of the acts that are accorded absolute immunity. *See Knowlton v. Shaw*, 704 F.3d 1, 6–7 (1st Cir. 2013) (absolute immunity to state officials who negotiated consent agreement with plaintiff's employer that entailed termination of plaintiff's employment); *see also Kent v. Cardone*, 404 F. App'x 540, 542–43 (2d Cir. 2011) ("Absolute immunity likewise extends to an agreement to forgo prosecution in exchange for certain types of concessions."); *Schloss v. Bouse*, 876 F.2d 287, 293 (2d Cir.1989) (absolute immunity for district attorney's decision not to prosecute in exchange for release of civil claims against the government).

Campbell fails to address any of the precedent governing absolute prosecutorial immunity. Nor does she dispute that Serafini was acting in her role as a state prosecutor or that Serafini's act of signing the stipulation was intimately associated with the judicial process. Instead, Campbell argues that Serafini should not be immune because she acted in excess of her authority under the State's forfeiture law and the Takings Clause.

This argument misunderstands the role and function of absolute prosecutorial immunity. The principle of absolute prosecutorial immunity exists to protect prosecutors from personal-capacity lawsuits even if the prosecutor has made a mistake or strayed beyond what the law allows. It is premised on the countervailing importance of discouraging vexatious litigation and on the notion that prosecutors may be held responsible for wrongful acts by means other than allowing private parties to file lawsuits against them for money damages. *See Imbler*, 424 U.S. at 423–29 (extensive discussion of reasons for absolute immunity for prosecutors and why it

applies even if it "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty").

To be sure, the Second Circuit has acknowledged that a prosecutor is not entitled to absolute immunity "for acts that are 'manifestly or palpably beyond his authority,' or performed in the 'clear absence of all jurisdiction.'" *Schloss*, 876 F.2d at 291 (quoting *Spalding v. Vilas*, 161 U.S. 483, 498 (1896), and *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). Thus, for example, a prosecutor would not have absolute immunity for bribes, sexual favors, or threatening to deprive a witness of her child if she does not give perjured testimony. *Id.* at 291-92.

Campbell makes no such showing against Serafini. She complains that Serafini had no right to sign a stipulation that extinguished her interests as an innocent owner.[30] But beyond pointing to evidence that Serafini knew of Campbell's ownership interest in the car, she does not point to evidence that Serafini was aware that Campbell met the law's requisites to qualify as an *innocent* owner, *i.e.,* that Campbell did not know or have reason to know that Bowens was using her car for drug dealing activity. *See* Conn. Gen. Stat. § 54-36h(d). Even assuming that Serafini should have done more to verify whether Campbell qualified as an innocent owner, any such failure of due diligence falls well short of showing that Serafini acted manifestly and palpably beyond her authority or that she acted in a clear absence of jurisdiction when she signed the forfeiture stipulation at issue.

In short, Serafini is entitled to absolute immunity from Campbell's individual-capacity claim for money damages. Serafini may not be held personally liable for her official acts that were intimately associated with the judicial process and for which there has been no showing that she acted manifestly or palpably in excess of her authority or in the clear absence of any

---

[30] Doc. #63 at 13.

jurisdiction. Accordingly, I will grant the motion to dismiss the individual-capacity federal Takings Clause claim against Serafini.[31]

### *Individual-capacity Takings Clause claim against Leigh*

As for Campbell's Takings Clause claim against Leigh, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). But Campbell alleges only that Leigh failed to give her notice of a stipulation and court judgments. She does not allege that Leigh herself took part in any "taking" of her property. Campbell has failed to allege facts that give rise to plausible grounds for relief against Leigh under the Takings Clause.

In any event, Leigh is entitled as a court clerk to absolute immunity for her conduct in the course of her judicial employment. The Second Circuit has joined "several other circuits [who] have concluded that the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997).

Thus, court clerks have been granted absolute immunity from liability for actions (or inactions) such as failure to serve notice or failure to file documents on a plaintiff's behalf. *See Gyadu v. Bainer*, 2021 WL 2073919, at *7 (D. Conn. 2021) (claim that clerk conspired with landlord to issue an execution of eviction without giving notice to plaintiff in violation of due process rights); *Charles v. O'Garro*, 2018 WL 2926307, at *3 (D. Conn. 2018) (claim that clerk did not file documents on plaintiff's behalf).

---

[31] Although absolute prosecutorial immunity extends only to claims for money damages rather than injunctive relief, *see Schloss*, 876 F.2d at 292, Campbell has no grounds for injunctive relief against Serafini or Leigh in their personal capacities for the reasons I have explained as to Campbell's official-capacity claims against them.

To be sure, the Second Circuit has suggested the possibility that a court clerk may not have absolute immunity rather than qualified immunity for failure to perform mere ministerial acts. *See Rodriguez v. Weprin*, 116 F.3d at 66; *McKnight v. Middleton*, 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *see also Williams v. Wood,* 612 F.2d 982, 985 (5th Cir. 1980) ("In entering an order and notifying the parties a clerk of court enjoys qualified but not absolute immunity."). But the sparse allegations of the complaint and the record here do not show that Leigh had a ministerial and obligatory duty to serve notice of the stipulation and judgments on Campbell.

The Connecticut forfeiture statute provides that at the outset of a civil forfeiture action "[t]he court shall identify the owner of said moneys or property and any other person as appears to have an interest therein, and order the state to give notice to such owner and any interested person by certified or registered mail." Conn. Gen. Stat. § 54-36h(b). Campbell admits that she had notice of the forfeiture action and in fact appeared in court in November 2017 to assert her interest in the car. What Campbell complains about is that she did not receive notice from Leigh of a *later* stipulation and entry of initial and amended judgments that affected the property in September and October 2018 and then again in February 2020. But she does not identify any statute or source of any other mandatory ministerial duty that imposed any duty on the court and on Leigh in particular to furnish notice to Campbell of these later court actions.

Even assuming Leigh were not entitled to absolute immunity, Campbell's failure to identify a clearly established law that required Leigh (as distinct from any other court personnel) to ensure that Campbell was specifically served with notice of the stipulation and ensuing judgments means that Leigh is entitled at the least to qualified immunity. *See Horn*, 11 F.4th at

168–69 (qualified immunity for government officer who does not violate clearly established right such that any reasonable officer would have known that the officer was violating that right).

It is very common for litigants—usually self-represented litigants who have not registered for electronic docket notifications—to complain that they did not receive notice of a particular court ruling or order. If this meant that a litigant could try to hold a court clerk personally liable for money damages, it would not be long before no one would be willing to serve as a court clerk, and then still fewer litigants would ever receive notices of the Court's rulings and orders. Courts should be very hesitant to allow litigants to sue court clerks in their personal capacity absent clear allegations of an unambiguous duty and flagrant wrongdoing.

In short, Campbell has failed to allege a plausible Takings Clause claim against Leigh. Even if she did, Leigh has absolute immunity from this claim. Accordingly, I will grant Leigh's motion to dismiss the federal Takings Clause claim against her.

### Remaining individual-capacity state law claims

As to the remaining individual-capacity state law claims, Connecticut state law provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a). Campbell's claims against Serafini and Leigh are based entirely on Serafini and Leigh's performance of their official duties, and she does not allege facts to plausibly show that Serafini or Leigh acted wantonly, recklessly, or maliciously. *See Johnson v. Cook*, 2021 WL 2741723, at *22 (D. Conn. 2021). Accordingly, I will grant the motion to dismiss the individual-capacity state law claims against Serafini and Leigh on the ground of their statutory immunity under Conn. Gen. Stat. § 4-165(a).[32]

---

[32] Campbell's briefing fails to cite or acknowledge § 4-165(a). Although the State defendants' briefing relies on § 4-165(a) as to Leigh only, it is clear from the broad statutory language that it applies with equal force to any

**CONCLUSION**

For the reasons set forth above, the Court GRANTS the State defendants' motion to dismiss.

It is so ordered.

Dated at New Haven this 9th day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

individual-capacity state law claim against Serafini. In any event, even assuming that Serafini was not entitled to immunity under § 4-165(a), she would nonetheless have absolute prosecutorial immunity under state law from state law individual-capacity claims. *See, e.g., Barese v. Clark*, 62 Conn. App. 58, 65, 773 A.2d 946, 950 (2001) (state prosecutor absolutely immune from crime victim's state law claims for breach of privacy, fraud, and intentional infliction of emotional distress).